## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HWI PARTNERS, LLC and HWI, TECHNOLOGIES, LLC, | : : : | |
| Plaintiff, | : : | |
| v. | : : | C. A. No. 13-918-RGA-MPT |
| CHOATE, HALL & STEWART LLP, DAVID J. BROWN, and STEPHEN J. TONKOVICH | : : : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

### A.    Procedural Background

On April 26, 2013, HWI Partners, LLC ("HWI Partners") and HWI Technologies, LLC ("HWI Technologies") (collectively, "plaintiffs"), filed suit in the Superior Court of the State of Delaware against Choate, Hall & Stewart LLP ("Choate"), David J. Brown ("Brown") and Stephen J. Tonkovich ("Tonkovich") (collectively, "defendants") for legal malpractice, *respondeat superior* and breach of contract.[1]  On May 23, 2013, defendants removed the present action to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2]  Defendants moved to dismiss the current action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on May 29, 2013.[3]

---

[1] D.I. 1 Ex. A.
[2] D.I. 1.
[3] D.I. 3.

### B.    Factual Background

HWI Partners and HWI Technologies are both Delaware limited liability companies.[4]  Choate is a Massachusetts registered professional limited liability partnership that provides legal advice and representation to clients, and both Brown and Tonkovich were partners at Choate during the relevant period in this litigation.[5]  In 2005, HWI Partners retained Choate for the purposes of facilitating the acquisition of a target company.[6]  In 2008, Choate assisted in the formation of two Delaware LLC's:  (1) HWI Technologies, a wholly-owned subsidiary of HWI Partners; and (2) HWI Acquisition, LLC ("HWI Acquisition"), a wholly-owned subsidiary of HWI Technologies.[7]  On March 28, 2008, HWI Acquisition entered into a purchase agreement to acquire Custom Cable Industries, Inc. ("Custom Cable"), wherein Custom Cable would become a wholly-owned subsidiary of HWI Technologies.[8]  Plaintiffs' initial attempt to secure financing from Laurus Capital Management LLC ("Laurus") failed.[9]  Subsequent negotiations with ComVest Capital, LLC ("ComVest") resulted in an agreement that ComVest would loan $9,000,000 for the acquisition and provide a secured revolving credit line of $5,000,000.[10]  ComVest, however, requested terms that would permit it, upon default, to become a majority equity holder in HWI Technologies while retaining its status as a secured creditor of Custom Cable.[11]  Plaintiffs were willing to permit the majority equity

---

[4] D.I. 1 Ex. A at 2.
[5] *Id.*
[6] *Id.* at 3.
[7] *Id.* at 4.
[8] *Id.*
[9] *Id.* at 4-5.
[10] *Id.* at 5.
[11] *Id.* at 6.

provision, but only if the debt to ComVest was extinguished in the process.[12]  On July

15, 2008, plaintiffs executed a Loan Agreement with ComVest which included the

majority equity provision, but failed to provide for extinguishment of the debt.[13]

Pursuant to the acquisition, Custom Cable became a wholly-owned subsidiary of

HWI Technologies.[14]  In 2009, Custom Cable defaulted on its loan from ComVest, and

ComVest exercised its right to gain 51% ownership of HWI Technologies.[15]

Subsequently, ComVest foreclosed on Custom Cable pressing it into Chapter 11

bankruptcy proceedings.[16]

C.    **Legal Standard**

i.    **Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)**

Under FED. R. CIV. P. 12(b)(1), a defendant may challenge the subject

matter jurisdiction of the court upon motion, generally a motion to dismiss.[17]  Upon such

challenge, the burden to prove subject matter jurisdiction shifts to the party asserting its

existence.[18]  A motion to dismiss under Rule 12(b)(1) may take the form of either a

facial attack based on the complaint or a factual attack on the basis of subject matter

jurisdiction as it pertains to underlying facts.[19]  In the case of a facial attack, the court is

limited to considering the allegations in the complaint and must treat the allegations as

---

[12] *Id.*
[13] *Id.* at 7.
[14] *Id.*
[15] *Id.* at 8.
[16] *Id.*
[17] FED. R. CIV. P. 12(b)(1).
[18] *Gould Electronics Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).
[19] *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

true.[20]  However, in the case of a factual attack, the court is free to consider outside evidence including affidavits, depositions and testimony and is not bound to the presumption of truthfulness as to allegations in a complaint.[21]

> ### ii.    Motion to Dismiss Under Rule 12(b)(6)

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), a court must also consider Rule 8(a)(2).  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[22]  As such, a plaintiff must plead sufficient facts to render the claim facially plausible.[23]  The court is required to consider all material allegations of the complaint as true when evaluating a motion to dismiss under Rule 12(b)(6).[24]  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[25]  A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[26]

"Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when reviewing a

---

[20] *Id.*

[21] *Id.*; *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *Mortensen*, 549 F.2d at 891.

[22] FED. R. CIV. P. 8(a)(2).

[23] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[24] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[25] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

[26] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

motion to dismiss.[27]  In the event that matters outside of the pleadings are considered, the court is required to consider the motion as a Rule 56 motion for summary judgment.[28]  However, a court may consider "matters incorporated by reference integral to the claim, items subject to judicial notice, matters of public record, and orders and items appearing in the record of the case" without converting the motion to dismiss to a motion for summary judgment.[29]  A plaintiff is entitled to notice and a fair opportunity to respond to evidence considered by the court, but where such notice was available, it is proper for the court to consider that evidence.[30]

### D.   Positions of the Parties

Defendants argue plaintiffs lack standing and the claims fall outside of the statute of limitations, rendering dismissal appropriate.[31]  With respect to HWI Technologies, defendants point out that HWI Technologies was not a LLC in good standing at the commencement of the underlying suit, and under Delaware law, such a LLC may not maintain a court action.[32]  Defendants characterize plaintiffs' claims as derivative in nature, consisting of pro rata losses as shareholders, depriving them of standing to sue.[33]  Furthermore, defendants assert plaintiffs are barred by the Bankruptcy Court

---

[27] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 988 F.2d 1192, 1196 (3d Cir. 1993).
[28] FED. R. CIV. P. 12(d).
[29] *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).
[30] *Pension Benefit*, 998 F.2d at 1196-97 ("When a complaint relies on a document, however, the plaintiff is obviously on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.") (internal citations omitted).
[31] D.I. 4 at 1.
[32] *Id.* at 17.
[33] *Id.* at 7-11.

Order forbidding equity holders of Custom Cable from commencing or continuing actions on behalf of Custom Cable, including derivative claims.[34]  Defendants also contend plaintiffs are barred by the applicable statute of limitations and no relevant exception exists.[35]

HWI Technologies counters it is now in good standing and should be permitted to maintain its current suit under Delaware law.[36]  Plaintiffs assert they meet the requisite standing requirements, and argue they suffered an injury-in-fact.[37]  Plaintiffs further maintain their claims are direct rather than derivative in nature under either Delaware or Florida law.[38]  In addition, they contend the direct nature of the claims renders the Bankruptcy Court Order inapplicable to the instant matter.[39]  With respect to the statute of limitations, plaintiffs argue both the "discovery" and "fraudulent concealment" exceptions apply, tolling the limitations time sufficiently to permit the present action.[40]  Specifically, they allege defendants' conduct, including misrepresentations as to the contents of the loan agreement, resulted in their losses in the form of fees, investment capital and value.[41]

## II.  ANALYSIS

### A.  Subject Matter Jurisdiction and Capacity to Sue

Defendants request their motion be granted with respect to HWI Technologies

---

[34] *Id.* at 11.
[35] *Id.* at 11-17.
[36] D.I. 6 at 20.
[37] *Id.* at 7.
[38] *Id.* at 9-10.
[39] *Id.* at 12.
[40] *Id.* at 14-20.
[41] *Id.* at 8-9.

since the entity was not in good standing at the commencement of the suit,[42] and restoration of its good standing subsequent to the filing and removal of this action is insufficient to cure this deficiency.[43]

Plaintiffs counter HWI Technologies paid its past due taxes, is currently in good standing, and Delaware law mandates it remain as a plaintiff in the present action.[44] Plaintiffs rely on *Chanz Enters. LLC v. JHL Brighton Design/Décor Center, LLC*, to demonstrate that Delaware law permits maintenance of a suit filed while a LLC was not in good standing, when it subsequently cures the deficiency.[45]

Under FED. R. CIV. P. 17(b)(3), a party's capacity to sue is determined by the law of state where the district court sits.[46]   Delaware law provides "[a] domestic limited liability company that has ceased to be in good standing . . . may not maintain any action, suit or proceeding in any court of the State of Delaware until such domestic limited liability company . . . has been restored to . . . good standing . . . ."[47]  A federal court, however, must consider whether it had jurisdiction based on the facts as they

---

[42] D.I. 4 at 17-18.
[43] D.I. 9 at 10.
[44] D.I. 6 at 20.
[45] C.A. No. 09C-06-072 MJB, 2010 WL 2642885, at *3 (Del. Super. June 30, 2010); D.I. 6 at 20.
[46] FED. R. CIV. P. 17(b)(3).  Under FED. R. CIV. P. 17(b)(2) capacity of a corporation is determined by the laws of the state of organization, thus Delaware law would apply whether capacity is determined under Rule 17(b)(2) or 17(b)(3).  However, a LLC is not vested with the powers of a corporation under Delaware law, thus rendering Rule 17(b)(2) inapplicable.  *See First Am. Mort., Inc. v. First Home Builders of Florida*, C.A. No. 10-CV-0824-RBJ-MEH, 2011 WL 4963924, at *12 (D. Colo. Oct. 14, 2011) (holding a LLC is not a corporation for purposes of Rule 17(b) where no state statute grants to it the powers of corporations).
[47] 6 DEL. C. § 18-1107(l).

7

existed at the time the action was brought.[48]

Defendants' challenge to HWI Technologies capacity represents a factual attack on subject matter jurisdiction because it is based on underlying facts or evidence outside the complaint, which the court may consider.  Although plaintiffs rely on *Chanz* as authorizing continued maintenance of the action in light of their subsequent cure by payment of taxes, this cure is insufficient to establish subject matter jurisdiction at the time this matter was removed to federal court.  The ruling in *Chanz* did not examine nor address standing or subject matter jurisdiction at the time of filing or removal of the complaint.  With respect to federal courts, subject matter jurisdiction is analyzed based on the facts at the time of removal.  At the time of removal, HWI Technologies was not a LLC in good standing with the State of Delaware,[49] and lacked the capacity to sue under Delaware law, specifically, 6 DEL. C. § 18-1107(l), for failure to pay annual franchise taxes.  Thus, as of the time of filing and removal, this court lacked subject matter jurisdiction over HWI Technologies' claims.  Therefore, defendants' motion on this issue should be granted.

## B.    Standing[50]

Defendants claim plaintiffs lack standing to bring the present action,[51] because

---

[48] *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 582 (2004); *see also The Real Estate Network, LLC v. Gateway Ventures, LLC*, No. 4:05-CV-422-CAS, 2005 WL 1668194, at *2 (E.D. Mo. July 12, 2005) (applying the time-of-filing rule in conjunction with 6 DEL. C. § 18-1107(l)).

[49] D.I. 5 Ex. C.  HWI Technologies, per the Delaware Secretary of State, was not a LLC in good standing from June 1, 2011 until at least May 29, 2013.  *Id.*

[50] Although in the previous section, the court recommends granting defendants' motion as to HWI Technologies, which effectively leaves HWI Partners as the only plaintiff, for consistency, it will continue to refer to plaintiffs for the remaining analysis.

[51] D.I. 4 at 6.

their claims are derivative in nature, and such claims are barred by the Bankruptcy

Court Order forbidding them from asserting derivative claims of Custom Cable.[52]

Regarding the nature of plaintiffs' claims, defendants point to the loan agreement

between ComVest and Custom Cable as the foundation for this action in which claims

admittedly belonging to Custom Cable are asserted.[53]  Defendants argue Florida law

applies to the analysis of whether plaintiffs' claims are direct or derivative since Custom

Cable is a Florida corporation.[54]  According to defendants, under Florida law, whether

the claims are direct or derivative is a function of whether the injuries suffered by them

is "separate and distinct" from other shareholders.[55]  Given plaintiffs' injuries are losses

as shareholders incurred *pro rata*, defendants argue the claims are derivative.[56]

Plaintiffs assert the harm suffered is direct and constitutes "injury-in-fact," since

defendants owed to them fiduciary duties based on the attorney-client relationship, and

the underlying malpractice involves the acquisition process initiated by HWI Partners.[57]

Against this backdrop, plaintiffs maintain Delaware law applies; the outcome, however,

under either Florida or Delaware law would be the same.[58]  Plaintiffs characterize the

harm suffered as resulting from defendants' failures to provide requested protections

during the acquisition process, and violations of duties inherent in the attorney-client

relationship.[59]  As to direct claims, plaintiffs argue they are not barred by the Bankruptcy

---

[52] *Id.* at 11.
[53] *Id.* at 7.
[54] *Id.* at 7.
[55] *Id.* at 8.
[56] *Id.* at 9.
[57] D.I. 6 at 7-9.
[58] *Id.* at 9-10.
[59] *Id.* at 12.

9

Court Order.[60]

Defendants' challenge to plaintiffs' standing represents a facial attack of subject matter jurisdiction because it refutes jurisdiction on the basis of the complaint rather than underlying facts, thus limiting the analysis to the complaint with the presumption that well-pled allegations are true.  Concerning the injury-in-fact requirement for standing, a plaintiff must suffer "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[61]  Here, plaintiffs maintain defendants' conduct caused injury due to legal malpractice and other misconduct.[62]  Viewing their allegations in the complaint as true and in a favorable light, plaintiffs plead sufficient facts to indicate the claims are direct in nature:  the causes of action relate to injuries separate and distinct from Custom Cable and belonging to plaintiffs.  As such, defendants' motion to dismiss for lack of standing should be denied.

### C.      Statute of Limitations

The parties agree Delaware's three-year statute of limitations, 10 DEL. C. § 8106, applies to the present action.[63]

Defendants argue the limitations period expired on July 15, 2011, three years after the closing date of the loan,[64] because the loan documents were executed on July

---

[60] *Id.*
[61] *Ballentine v. U.S.*, 486 F.3d 806, 814 (3d Cir. 2007).
[62] D.I. 1 Ex. A.  Plaintiffs allege direct damages of fees and expenses paid to defendants for legal services and advice pertaining to the acquisition.  *Id.* at ¶ 23.
[63] 10 DEL. C. § 8106; D.I. 4 at 12; D.I. 6 at 14.
[64] D.I. 4 at 13.

10

15, 2008 and any legal malpractice accrued as of that date.[65]  Alternatively, they contend the statute of limitations expired, at the latest, in August 2012, three years after Custom Cable defaulted.[66]  Since the default triggered ComVest's acquisition of a majority interest in HWI Technologies, defendants maintain, as a result, plaintiffs were on reasonable notice and required to review and examine the loan documents.[67]

Defendants argue no exceptions to the limitations period apply.[68]  First, they reason the alleged error in the loan document was *not* inherently unknowable.[69]  Noting a party is charged with knowledge of the contents of a contract and emphasizing the sophistication of plaintiffs, defendants posit no exception exists; plaintiffs should have known of the purported error in the loan agreement since it was obvious.[70]  Secondly, defendants observe the fraudulent concealment exception cannot apply, for the same reason, namely, plaintiffs failed to review the document to discern the alleged error.[71]

 Plaintiffs assert both the discovery exception and fraudulent concealment exception apply to toll the statute of limitations.[72]  Plaintiffs argue the discovery exception is particularly applicable since a client is expected and has the right to rely on advice of counsel; otherwise, applying defendants' logic means a client would have to secure other counsel to review defendants' documents and advice.[73]  They present two

---

[65] *Id.* at 13-14.
[66] *Id.* at 14.
[67] *Id.* at 14.
[68] *Id.* at 15.
[69] *Id.* at 16.
[70] *Id.* at 16-17; D.I. 9 at 7.
[71] D.I. 9 at 8.
[72] D.I. 6 at 14.
[73] *Id.*

alternative operative dates under the discovery exception.[74]

First, plaintiffs contend the statute of limitations was tolled until September 29, 2010, the date of the Bankruptcy Court decision regarding Custom Cable,[75] because no notice of error could have occurred before then.[76]  In the alternative, they claim, in response to defendants' argument that tolling ended in August 2009, the limitations period tolled until January 18, 2010, the date Comvest exercised its option.[77]  At a minimum, they maintain the parties' vying arguments create a factual dispute of when the error in the loan document was or should have been known.[78]  Under the fraudulent concealment exception, plaintiffs emphasize defendants misrepresented the contents of the loan agreement on which they justifiably relied as clients, that eliminated any suspicion of error until the Bankruptcy Court's ruling on September, 29, 2010.[79]

For statute of limitations purposes, a federal court whose jurisdiction depends on diversity applies the applicable state law.[80]  Under Delaware law, the discovery exception permits tolling of the limitations period until the underlying facts of a cause of action are known or should have been known, that is when a reasonable person would be on notice to inquire.[81]  To invoke the exception, the injury must be "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury

---

[74] *Id.* at 16-17.
[75] *Id.* at 17.
[76] *Id.* at 17.
[77] *Id.* at 17-18.  Plaintiffs claim they were unaware of ComVest's intent to exercise its rights until that date.
[78] *Id.* at 18.
[79] *Id.* at 19.
[80] *Pioneer Nat'l Title Ins. Co. v. Sabo*, 432 F. Supp. 76, 78 (D. Del. 1977).
[81] *Wal-mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004).

complained of."[82]   Delaware courts apply the discovery rule to cases of legal malpractice

given the nature of the attorney-client relationship and the inability of a lay client to

detect professional negligence.[83]   Delaware law also permits application of the

fraudulent concealment exception to toll the statute of limitations;[84] however, there must

be "an affirmative act of 'actual artifice' by the defendant that either prevented the

plaintiff from gaining knowledge of material facts or led the plaintiff away from the

truth."[85]

Without addressing the merits, in the present case, plaintiffs allege sufficient

facts for application of either the discovery exception or the fraudulent concealment

exception to toll the statute of limitations.   Although defendants contend plaintiffs should

have been aware of the contents of the loan agreement at either the time of signing or

default, taking the factual contentions of the complaint as true, at this stage, defendants'

motion should be denied.   Plaintiffs not only assert misconduct in the drafting of the loan

agreement, but also provide ample facts demonstrating professional error by

defendants.[86]   Delaware courts recognize these exceptions in legal malpractice cases

---

[82] *Id.* (citing *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004).

[83] *Coleman*, 854 A.2d at 842.   To require a client to know of an attorney's negligence at the time of alleged malpractice would require the client to hire a separate attorney, which is wasteful and inefficient.   *Pioneer*, 432 F. Supp. at 81.

[84] *In re Tyson Foods, Inc.*, 919 A.2d 563, 584-85 (Del. Ch. 2007).

[85] *Id.* at 585.

[86] Plaintiffs aver that during a telephone conversation the night prior to closing, Brown repeatedly assured Martin Hunt, managing director of HWI Partners, the loan extinguishment provision was included in the loan agreement, and they relied on his advice.   D.I. 1 Ex. A at ¶ 22-23.   Plaintiffs further maintain Brown affirmed the capitalization table provided at closing was correct.   *Id.* at ¶ 23.   Tonkovich is also accused of failing to include the loan extinguishment provision in the final loan agreement.   *Id.* at ¶ 26.

because of the special relationship between an attorney and client, and the realistic probability that a client is unaware of the underlying facts supporting a cause of action, either due to lack of knowledge or misrepresentations by counsel.  As a result, defendants' Rule 12(b)(6) motion on the statute of limitations should be denied.

### III.    CONCLUSION

Defendants' motion to dismiss should be granted in part and denied in part. Defendants' motion should be granted as to HWI Technologies because it lacked the capacity to sue under Delaware law, and as a result, at the time of removal, this court lacked subject matter jurisdiction over HWI Technologies' claims.  Regarding HWI Partners, the motion should be denied since adequate facts are alleged to support standing and tolling exceptions to the applicable statute of limitations.

### IV.    ORDER & RECOMMENDED DISPOSITION

For the reasons contained herein, the court recommends defendants' motion to dismiss (D.I. 3) be GRANTED as to HWI Technologies, and DENIED with respect to HWI Partners.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(a) and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen days after being served with a copy of this Report and Recommendation.  The objections and response to the objections are limited to ten pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

14

December 11, 2013                    /s/ Mary Pat Thynge_____
                                     UNITED STATES MAGISTRATE JUDGE